## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **LORIE D. B.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 21-CV-407-CDL** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

The plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **affirms** the Commissioner's decision denying benefits.

### I.     Standard of Review

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the Court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.    Procedural History

The plaintiff filed a Title II application for a period of disability and disability insurance benefits on August 6, 2019. (R. 62). She alleged a disability onset date of November 20, 2018. (R. 208). The claim was denied both initially and upon reconsideration. (R. 62, 75). Thereafter, the plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 106). On February 2, 2021, the ALJ held a telephonic hearing due to the Coronavirus Disease 2019 (COVID-19) pandemic. (R. 32-61). The plaintiff was represented by counsel at the hearing. (R. 34). A vocational expert (VE) also

2

testified at the hearing. (R. 58-60). At the hearing, the plaintiff amended her alleged onset date to August 1, 2019. (R. 37, 40).

The ALJ denied benefits in a decision dated March 10, 2021. (R. 12-26). The plaintiff appealed the ALJ's decision to the Appeals Council, which denied the plaintiff's request for review on July 26, 2021. (R. 1). Therefore, the ALJ's decision became the final decision of the Commissioner. *Id.* The plaintiff then timely appealed to the district court. (Doc. 2). Accordingly, the Court has jurisdiction to review the ALJ's March 10, 2021 decision under 42 U.S.C. § 405(g).

## III.    The ALJ's Decision

The Commissioner uses a sequential five-step process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). If the Commissioner determines that the claimant is or is not disabled at any step of the sequential process, the evaluation ends and will not move on to the next step. *See id.*; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). The claimant bears the burden on steps one through four to establish a prima facie case of disability. *Lax*, 489 F.3d at 1084. The burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient capacity to perform work in the national economy given the claimant's age, education, and work experience. *Id.*

### A.    Step One

At step one, the claimant must demonstrate that she is not engaged in any substantial gainful activity. 20 C.F.R. § 404.1520(b); *see Lax*, 489 F.3d at 1084. Here, the ALJ found

3

that the plaintiff had not engaged in substantial gainful activity since August 1, 2019, her amended alleged onset date. (R. 17).

### B.   Step Two

At step two, the Commissioner determines whether the claimant has an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see Lax*, 489 F.3d at 1084. Here, the ALJ found that the plaintiff suffers from the following severe medically determinable impairments: Stage 2 breast cancer with metastatic lymph nodes; status post mastectomy and lymph node removal; chemotherapy and radiation therapy; reconstructive surgery. (R. 17). The ALJ found the plaintiff's alleged mental impairments of depression and anxiety, singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are, therefore, non-severe. (R. 18).

### C.   Step Three

At step three, the ALJ must determine whether the claimant's impairments or combination of impairments is equivalent to one that is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listings), which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. §§ 404.1520(d). Here, the ALJ determined that the plaintiff's impairments do not meet or medically equal the criteria for any Listing, specifically addressing Listings 13.00 (malignant neoplasm), 13.10 (breast sarcoma), 13.10A (carcinoma with metastases to the supraclavicular or infraclavicular nodes to ten

or more ancillary nodes), 13.10B (distant metastases), 13.10C and D (recurrent carcinoma or small cell (oat cell) carcinoma). (R. 19; *see* 20 C.F.R. § 404 Subpt. P App'x 1).

With regard to mental impairments, the ALJ discussed the "paragraph B" criteria, which are four broad mental functional areas used to determine whether a claimant's mental impairments functionally equal a Listing. (R. 18-19; *see* 20 C.F.R. § 404 Subpt. P App'x 1). Here, the ALJ found that the plaintiff has a mild limitation in each of the four paragraph B criteria: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 18-19). The ALJ did not explicitly address whether the plaintiff's nonsevere mental impairments meet or equal a Listing.

### D.   Step Four

At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work. Step four is comprised of three distinct phases. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). At the first phase, the ALJ determines the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(e). At the second phase, the ALJ determines the mental and physical demands of the claimant's past relevant work. *Winfrey*, 92 F.3d 1023 (citing 20 C.F.R. § 404.1520(e)). At the final phase, the ALJ determines whether the claimant has the ability to meet the job demands of past relevant work from phase two given the RFC determined at phase one. *Winfrey*, 92 F.3d 1023 (citing Social Security Ruling (SSR) 86.8). If the claimant can perform her past relevant work, she is not disabled.

### i.     RFC

Here, the ALJ determined that the plaintiff has the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). (R. 19). Light work:

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). In explaining the RFC determination, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (R. 20). The ALJ "also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1529c." *Id.* The ALJ concluded that "[e]vidence in the record is consistent with…light level findings." (R. 21).

### ii.    Medical Records and Opinion Evidence

#### 1.     Physical Impairments

The ALJ outlined the plaintiff's course of treatment for her breast cancer and stated that he "fully considered the medical opinions and prior administrative medical findings." (R. 25). In May 2019, the plaintiff was diagnosed with left breast cancer by LaNette Smith, M.D., a breast specialist, and began chemotherapy. (R. 21). The plaintiff then began seeing Dr. Charles Taylor and other providers at Oklahoma Cancer Specialists and Research Institute (Oklahoma Cancer Specialists). (R. 21-24). In June 2019, the plaintiff had follow-up appointments with Dr. Tracy Asher at Family Medicine Associates regarding her cancer

6

and chemotherapy. (R. 21). The plaintiff also met with Dr. M. Connie Nguyen at Oklahoma Cancer Specialists for a radiation consultation. (R. 22). The plaintiff reported varying side effects due to chemotherapy and radiation, including fatigue, nausea, shortness of breath, bone pain, neuropathy tingling in her fingers and toes, hot flashes, and depression. (R. 21-25).

In November 2019, the plaintiff's final two chemotherapy sessions were cancelled due to worsening neuropathy. (R. 22). In December 2019, doctors performed a left breast mastectomy and a subsequent breast reconstruction surgery in August 2020. (R. 22-23). In December 2019 and into 2020, the plaintiff attended follow-up appointments with Dr. Taylor, an Oklahoma Cancer Specialists nurse, Dr. Nguyen, Dr. Smith, and the plaintiff's plastic surgeon. *Id.* In April 2020, the plaintiff completed radiation therapy. (R. 23).

In November 2020, the plaintiff elected to have a hysterectomy and bilateral oophorectomy. In late 2020, the plaintiff saw Dr. Smith for a follow-up where Dr. Smith told the plaintiff she saw nothing new or suspicious in the examination. (R. 24).

The State's Disability Determination Services (DDS) requested the plaintiff undergo a physical examination for her reported disability based on stage 2A breast cancer and anxiety. (R. 22). On November 16, 2019, the plaintiff underwent a physical examination with Michael Hitsman, D.O. (R. 22). The plaintiff reported numbness in her hands, feet, and arms that comes and goes; neuropathy in her left leg; musculoskeletal weakness; difficulty with stairs and that the activity left her shaky; shortness of breath with exertion; and bothersome swelling in her left foot. *Id.* At the time of this examination, the plaintiff was preparing for a mastectomy and subsequent radiation. *Id* Dr. Hitsman's

7

examination "produced no findings of a limitation in her hands or grip strength." (R. 23). Dr. Hitsman noted no muscle atrophy or contracture. *Id.* Her back and neck extension were mildly limited. *Id.* Dr. Hitsman "offered no limitations in the use of opposition of the thumb to the fingertips or the ability to manipulate small objects or grasp tools." *Id.* In all modes of evaluation, the plaintiff's upper extremities were reportedly normal. *Id.* The plaintiff's hip adduction on the right and left were within normal limits. Dr. Hitsman reported the plaintiff had a normal gait but did have weakness with toe walking and poor balance on toes only. *Id.* The ALJ noted that Dr. Hitsman "did not offer a specific opinion about the claimant's limitations, but the findings support" an RFC to perform the full range of light work. (R. 23).

On August 14, 2019, the plaintiff saw Deborah Hendricks, APRN-CNP, at Oklahoma Cancer Specialists. (R. 21-22). At that time, the plaintiff had completed four cycles of chemotherapy. (R. 21). She reported fatigue, nausea, and tenderness of the mass in her right breast. *Id.* She reported no shortness of breath. (R. 21-22). Nurse Hendricks noted the plaintiff's "condition as ambulatory and capable of all self-care but unable to carry out any work activities, up and about more than 50% of waking hours, alert, in no acute distress, and ambulatory without assistance." (R. 22).

In an evaluation for radiation therapy with Dr. M. Connie Nguyen on December 10, 2019, Dr. Nguyen reported the plaintiff was "tolerating chemo ok." *Id.* The plaintiff complained of bone pain, neuropathy, moderate balance problems, extremity weakness, and moderate swelling in her feet and ankles. *Id.* Dr. Nguyen noted the plaintiff was

"restricted in physically strenuous activity, but ambulatory and able to carry out work of a light or sedentary nature." *Id.*

In a follow-up on December 18, 2019, Dr. Taylor noted the plaintiff was "healing and recovering well." (R. 23). The plaintiff reported experiencing neuropathy due to Taxol and that it had been previously treated with Gabapentin with good relief. *Id.* She had run out of the medication and reported a recurrence of numbness in her fingers and feet, so Dr. Taylor refilled the plaintiff's prescription for Gabapentin. *Id.*

On January 14, 2020, the plaintiff returned to Dr. Nguyen reporting she had a back spasm since the resection and expander surgery, and she was given Flexeril for this condition. *Id.*

On October 7, 2020, the plaintiff saw Misty Anderson, APRN-CNP, at Oklahoma Cancer Specialists. The plaintiff reported mild joint paint, but her main issue that day was depression. (R. 24). Ms. Anderson's exam did not include any report of neuropathy complaints or findings. Ms. Anderson noted that the plaintiff had normal gait and station. *Id*.

In November 2020, the plaintiff saw Eric Thomas, M.D. for consultation for a potential hysterectomy and oophorectomy. *Id*. At this appointment, the plaintiff complained of headaches, dizziness, loss of balance, loss of sensation, confusion, and memory loss. *Id*. Dr. Thomas noted the plaintiff was well developed and demonstrated a normal gait and station. Dr. Thomas reported her Eastern Clinical Oncology Group (ECOG) performance as "restricted in physically strenuous activity but ambulatory and

able to carry out work of a light or sedentary nature, such as light housework, office work." *Id*.

On December 7, 2020, the plaintiff saw Dr. Smith. *Id*. According to the visit notes, the plaintiff was "doing well with no other complaints." (R. 24). While reviewing symptoms, the plaintiff reported pain; weakness; and numbness in her arms, feet, hands, and legs. *Id.*

In November 2019 and March 2020, state agency physicians Peyton Osborne, M.D., and Karl Boatman, M.D., respectively, reviewed the plaintiff's medical records. Both physicians concluded the plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently and sit and stand/walk six hours each per eight-hour workday. (R. 71-72, 85-87). The DDS physicians offered opinions that the plaintiff was able to perform light work. (R. 25). The ALJ adopted the DDS physicians' light limitations, finding their opinions are "consistent with [the] evidence." *Id*.

## 2.   Mental Impairments

In June 2019, the plaintiff sought treatment with Dr. Asher for emotional issues, anxiety, depression, insomnia, and fatigue. (R. 21). Dr. Asher prescribed Xanax every eight hours as needed. *Id*.

On October 7, 2020, the plaintiff saw Misty Anderson, APRN-CNP, reporting depression. (R. 24). The plaintiff reported she was under the care of a psychiatrist and was prescribed Zoloft and Xanax. *Id*. The plaintiff also reported she was engaged in psychotherapy. *Id*.

On July 13, 2020, the plaintiff saw Amy Malin, LPC, at Strength of Mind with complaints of PTSD, depression, and anxiety symptoms. (R. 25). The plaintiff reported experiencing more acute issues in the previous six months but had had anxiety symptoms for ten years. *Id*. The plaintiff also reported a bad childhood; physical and sexual abuse; an alcoholic father; discovering her husband had been unfaithful and leaving her when her cancer became "too much to deal with"; feelings of panic and being overwhelmed; feeling frantic; and experiencing memory issues, distressing memories, and flashbacks. *Id*. The plaintiff continued seeing Ms. Malin into December 2020. (R. 530). The ALJ's decision noted that the plaintiff's therapy records indicate she has been coping with a serious physical illness as well as the dissolution of her marriage. (R. 25).

Sally Varghese, M.D., and Ryan Jones, Ph.D., respectively, reviewed the plaintiff's medical records in October 2019 and April 2020, respectively, and found the plaintiff's anxiety and depression were not severe. (R. 69, 83-84). The ALJ found that the plaintiff's records confirm a diagnosis of depression. (R. 25). The ALJ cited the DDS psychologists' opinions that the plaintiff's "medically determinable mental impairments are non severe" and found those opinions to be "consistent with the overall medical evidence and psychological evaluations." *Id.*

### iii.    The Plaintiff's Statements Concerning Symptoms

The ALJ provided a review of the plaintiff's hearing testimony, as follows:

> She cannot work because since she finished chemotherapy, she constantly has no feeling in her feet, her arms and hands and cannot tell if things are hot or cold. Both of her arms feel like they're asleep, not necessarily at the same time. She rarely drives because of numbness in her arms, but she is able to drive

11

to a nearby store once or twice a week. After chemotherapy, she had radiation, which turned her toes black. She drops things and falls. She cannot mop her own floor because it is tiring. She is in bed by 6:30 every evening. Currently separated, her husband pays the bills until the divorce is final. She is forgetful. She arises at about 9 am. She helps her son with his school work and then goes to her chair. She can fix a sandwich for them. Her daughter helps with laundry. She drops things and cannot tell if she is cut (she has been cut before), so she will wash glasses but not silverware. She cannot button things because of a lack of grip or feeling. November of 2019, reduced her chemotherapy because of worsening neuropathy and prescribed Gabapentin. She takes it when she has to. She does not use steps because of falls. She cannot walk on an uneven surface, and she has problems walking on an even surface due to shortness of breath.

(R. 20) (exhibit citation omitted). The ALJ concluded that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.*

### iv.   Past Relevant Work

At step four, the ALJ concluded that the plaintiff is capable of performing her light, semiskilled past relevant work as a retail clerk and home companion as actually and generally performed, and as a retail assistant manager only as generally performed. (R. 25-26). Accordingly, the ALJ found the plaintiff not disabled at step four.

## IV.   Discussion

The plaintiff argues that the ALJ's analysis of the plaintiff's subjective statements was legally flawed and not supported by substantial evidence, as he failed to sufficiently

12

explain his finding that the plaintiff's physical impairments were limiting but not disabling. The plaintiff also argues that the ALJ's assessment of the plaintiff's mental RFC was legally flawed and not supported by substantial evidence, as he failed to mention additional problems that would impact her ability to perform her semiskilled past relevant work. The Commissioner contends the ALJ considered the plaintiff's subjective statements regarding her limitations, considered the medical evidence in the record, and the ALJ's mental RFC determination is reasonable and is supported by substantial evidence.

### A.   Physical RFC

The ALJ concluded that, although the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (R. 20). A claimant's subjective complaints of pain or other symptoms, alone, cannot establish disability. *See* 20 C.F.R. § 404.1529(a). In assessing the intensity and persistence of a claimant's pain, the Commissioner will consider objective medical evidence and will "carefully consider any other information [a claimant] may submit about [their] symptoms." 20 C.F.R. § 404.1529(c). In evaluating such statements, an ALJ must consider: "(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a 'loose nexus'); and (3) if so, whether considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*,

13

834 F.2d 161, 163-64 (10th Cir. 1987)).[1]  In conducting the consistency analysis, the ALJ

considers objective medical evidence and will also "carefully consider any other

information [the claimant] may submit about [their] symptoms." 20 C.F.R. § 404.1529(c).

Consistency determinations "are peculiarly the province of the finder of fact."

*Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 2000); *see also White v. Barnhart*, 287 F.3d

903, 910 (10th Cir. 2001) (ALJ's evaluation of symptom allegations "warrant particular

deference"). However, the ALJ must explain "the link between the evidence and"

consistency determination. *Kepler*, 68 F.3d at 391; *see also* 20 C.F.R. § 404.1529 (ALJ

must provide "specific reasons . . . supported by the evidence in the case record"). Courts

---

[1]     While the Commissioner now describes the analysis as involving a two-step
process, the current regulatory policy generally comports with the approach as outlined in
previous cases, including *Luna* and *Keyes-Zachary*. *See Paulek v. Colvin*, 662 F. App'x
588, 593-94 (10th Cir. 2016) (unpublished). (Under 10th Cir. R. 32.1(A), "[u]npublished
decisions are not precedential, but may be cited for their persuasive value."). In evaluating
pain, the Commissioner considers factors including:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of . . . pain or other
> symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any
> medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain
> or other symptoms;
> (v) Treatment, other than medication, [the claimant] receive[s] or
> ha[s] received for relief of . . . pain or other symptoms;
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . .
> pain or other symptoms (e.g., lying flat on your back, standing for 15
> to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning [the claimant's] functional limitations
> and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c); *see also Keyes-Zachary,* 695 F.3d at 1167; *Branum v. Barnhart*,
385 F.3d 1268, 1273-74 (10th Cir. 2004) (quoting *Hargis v. Sullivan,* 945 F.2d 1482, 1489
(10th Cir. 1991)) (describing several similar factors which should be analyzed).

"will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (citing *Diaz v. Sec'y of Health & Hum. Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)).

The entire case record must inform the RFC determination. *See* 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c). However, "an ALJ is not required to discuss every piece of evidence." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). The ALJ is also not required to discuss every subjective symptom analysis factor. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (there is no requirement for "'a formalistic factor-by-factor recitation of the evidence . . . [s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the'" consistency of statements (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000))).

Here, the ALJ addressed the plaintiff's subjective statements from the hearing testimony (R. 20), made a detailed summary of the plaintiff's course of treatment for breast cancer (R. 21-25), considered the prior administrative medical findings of record (R. 25), and considered Dr. Hitsman's findings (R. 21-22).

The ALJ specifically mentioned the plaintiff's reported complaints of the side effects from chemo and radiation therapy throughout the record, including bone pain, nausea, neuropathy, fatigue, shortness of breath, hot flashes, depression, and anxiety. (R. 20-25). The ALJ also discussed specific evidence from the plaintiff's course of treatment. Specifically, the ALJ mentioned an August 22, 2019 report from the Oklahoma Cancer Specialists noting the plaintiff had "restricted physical activity, but she was ambulatory and able to carry out work of a light or sedentary nature." (R. 22; *see* R. 311). In a December

15

10, 2019 evaluation for radiation therapy, Dr. Nguyen noted that the plaintiff "was restricted in physically strenuous activity, but ambulatory and able to carry out work of a light or sedentary nature." (R. 22; *see* R. 604). Additionally, on November 16, 2019, Dr. Hitsman found "no . . . limitation in [the plaintiff's] hand or grip strength," "no muscle atrophy or muscle contracture," no required "use of an assistive device to ambulate," mildly limited back and neck extension, normal hip adduction limits, normal upper extremities in all modes of evaluation, "no limitations in the use of opposition of the thumb to the fingertips or the ability to manipulate small objects or grasp tools." (R. 23, *see* R. 414-18).

The ALJ noted that Dr. Hitsman did not offer a specific opinion about the plaintiff's limitations, but concluded that his findings support the plaintiff's ability to perform the full range of light work. (R. 23). On January 20, 2020, the plaintiff was "doing well" with her new issues. (R. 23; *see* R. 441). On March 18, 2020, the plaintiff's neuropathy and pain were "stable." (R. 23; *see* R. 587-88). The ALJ notes that by June of 2020, her condition was clinically stable (R. 23; *see* R. 566). In her evaluation and consultation for hysterectomy and oophorectomy in November of 2020, Dr. Thomas reported the plaintiff's ECOG Performance as "restricted in physically strenuous activity but ambulatory and able to carry out work of a light or sedentary nature." (R. 24; *see* R. 557). Finally, in December 2020, Dr. Smith saw nothing new or suspicious in the examination and noted the plaintiff was "doing well and with no other complaints." (R. 24; *see* R. 493-94).

After looking at this evidence, the ALJ found that the plaintiff could perform light work even after considering her breast cancer, chemotherapy, radiation, and surgeries. (R. 25). The ALJ's decision explained that, despite the plaintiff's subjective complaints, she

16

was "clinically stable" by June of 2020, when her breast cancer treatment was completed, and she was only reporting hot flashes that were "tolerable." *Id.* This is less than one year after the plaintiff's amended alleged onset date of August 2019. An impairment "must have lasted or be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.

The ALJ's opinion demonstrates he considered the plaintiff's hearing testimony, the information from the plaintiff's 2019 and 2020 function reports, Dr. Hitsman's examination findings, and the prior administrative findings of record.[2] The state agency consulting physicians' opinions are consistent with the ALJ's RFC determination. The ALJ concluded that,

> Overall, looking at the record, evidence shows that by June of 2020 (18F), the claimant had completed all treatment and was only reporting hot flashes that were "tolerable" at that point. Her BMNI was reportedly between 31 and 35. Her cancer was "clinically stable" at that time by the time of her hysterectomy which was performed with no reported issues. Overall, given evidence, DDS opined light limits. This appears consistent as despite claimant's subjective complaints, objective evidence shows minimal findings. Looking at the evidence it appears she could do above range of light work.

---

[2]     This case is distinguishable from the cases the plaintiff relies on. The court in *Lee J.* noted the ALJ did not provide any explanation for his consistency determination other than pointing to a lack of objective medical evidence in the record regarding a claimed symptom. *Lee J. v. Saul*, 2020 WL 6136235, at *3 (N.D. Okla. 2020) (unpublished). The court in *Roxanna L.H.* concluded the ALJ "merely recited evidence, without comment or adequate explanation as to how that evidence was consistent or inconsistent with Plaintiff's claims." *Roxanna L.H. v. Berryhill*, 2019 WL 1083564, at *5 (N.D. Okla. 2019) (unpublished). Here, the ALJ concluded the plaintiff's statements were not entirely consistent with the evidence in the record; however, the ALJ pointed to specific medical evidence within the record, as discussed above, and explained his findings. For instance, noting that the plaintiff's cancer was "clinically stable" and she only had limited, "tolerable" symptoms by June 2020. (R. 25).

(R. 25). The ALJ's decision also noted that when the plaintiff was next examined on October 7, 2020, she had no neuropathy complaints and examination findings indicated normal signs. Rather, "her main issue that day was depression." (R. 24).

Thus, the ALJ's decision addressed the plaintiff's subjective statements, evaluated the evidence of record, and concluded that the plaintiff could perform her past relevant work. The ALJ's decision included "specific" reasons, tied to evidence in the record supporting the ALJ's consistency findings. *Kepler*, 68 F.3d at 391; *see also* 20 C.F.R. § 404.1529. The plaintiff does not cite any additional functional limitations that would preclude the plaintiff from performing the full range of light work. Rather, the plaintiff is asking the Court to reweigh the same evidence and come to a different conclusion. *See Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1178 (10th Cir. 2020); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (citation and quotation omitted)). As such, the ALJ committed no reversible error in this portion of his analysis, and remand is not required.

### B.    Mental RFC

The second issue the plaintiff raises is that the ALJ's assessment of the plaintiff's mental RFC was legally flawed and not supported by substantial evidence. More specifically, the plaintiff alleges that the ALJ failed to address or ignored certain evidence

that indicated greater limitations were required. The Commissioner argues the interpretation of the evidence was reasonable and supported by substantial evidence.

In determining a claimant's RFC, "[t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting [the] decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Mays*, 739 F.3d at 576 (quoting *Clifton*, 79 F.3d at 1009-10); *see also Bigpond v. Astrue*, 280 F. App'x 716, 718, 2008 WL 2222016 (10th Cir. 2008).

The plaintiff argues that the ALJ improperly ignored some evidence in the reports from Ms. Malin. Specifically, the plaintiff argues that the ALJ ignored the plaintiff's initial reports of social avoidance, lack of motivation, and paranoia; the plaintiff's later references to ongoing passive suicidal thoughts; and Ms. Malin's belief that the plaintiff was struggling to obtain a complete and optimal response to medications and treatment. However, the plaintiff does not allege how these issues would affect her ability to work or specific limitations that result from those issues.[3]

---

[3]     The focus of disability determination is on the functional consequences of a condition, not merely the diagnosis or attendant circumstances. *See Qualls v. Apfel*, 206 F.2d 1368, 1372 (10th Cir. 2000) (noting that an ALJ's failure to include an alleged limitation in the RFC is not error if the limitation is not supported by the medical record; *see also Scull v. Apfel*, 221 F.3d 1352, 2000 WL 1028250, at *1 (10th Cir.) (unpublished) ("[D]isability determinations turn on the functional consequences, not the causes, of a claimant's condition.").

The ALJ considered the plaintiff's mental impairments while determining her RFC. The ALJ noted that, not long after the plaintiff's cancer diagnosis, she reported emotional issues, anxiety, and depression. (R. 21; *see* R. 534). The ALJ also noted the plaintiff's repeated complaints of depression. (R. 23-24, *see* R. 559, 564). However, the ALJ noted that the plaintiff reported she was under the care of a psychiatrist, engaged in psychotherapy, and being "medicated for this condition with psychotropic drugs." (R. 24-25; *see* R. 559, 563).

In June 2020, the plaintiff's PHQ-9 score (an assessment of depression) was reportedly negative. (R. 24; *see* R. 565). In July 2020, the plaintiff began seeing Ms. Malin. (R. 25; *see generally* R. 517-521). The ALJ cited Ms. Malin's treatment notes and the plaintiff's reports of PTSD, depression, and anxiety; the plaintiff's references to previous physical and sexual abuse; the plaintiff's husband leaving her during her cancer treatment; her problems with excessive crying, feelings of panic and being overwhelmed, and memory issues related to "chemo brain"; and distressing memories and flashbacks. (R. 25; *see generally* R. 515-531).

The ALJ found that the plaintiff's records confirm a diagnosis of depression, but noted the plaintiff is medicated for this condition with psychotropic drugs, and that in examinations, "she had a normal mood and affect; normal behavior; judgment and thought content normal." (R. 25; *see* R. 562). The ALJ noted that the plaintiff's therapy notes indicate she has been coping with a serious physical illness and the dissolution of her marriage "under already trying circumstances." (R. 25). Thus, the ALJ concluded that the plaintiff's depression, anxiety, and PTSD were situational stressors exacerbated by the

20

plaintiff's cancer diagnosis and separation from her husband. The ALJ concluded that the DDS psychologists' opinion that the plaintiff's medically determinable mental impairments are not "severe" is consistent with the overall medical evidence and psychological evaluations. *Id.*

After considering all of this evidence, the ALJ found that the plaintiff had no specific work-related mental limitations from her medically determinable mental impairments. "The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). Here, psychiatric findings determined the plaintiff had a normal mood and affect, normal behavior, and normal thought content and judgment. (R. 25). Furthermore, the record lacks any medical opinion assessing greater functional limitations than those contained in light work.

As such, substantial evidence supports the ALJ's mental RFC determination. The ALJ found that, even though the plaintiff had medically determinable impairments of depression and anxiety, those impairments were "nonsevere" and do not significantly affect her ability to perform basic work activities. (R. 18).

For the foregoing reasons, the ALJ also did not commit reversible error in failing to specifically address the portions of the record cited in the plaintiff's brief. Importantly, the plaintiff has pointed to nothing in Ms. Malin's treatment records supporting functional limitations beyond those the ALJ included in his RFC determination; nor has the Court's review of Ms. Malin's treatment records identified significant evidence that is not cumulative of the issues the ALJ addressed in his decision. As such, the ALJ's decision

provided an adequate discussion of Ms. Malin's treatment notes. *See Mays*, 739 F.3d at 576; *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000) (affirming where claimant had not "directed [the court's] attention to any medical evidence that was disregarded" related to alleged functional limitation); *see also Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) (where "ALJ does not need to reject or reweigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened"). To the extent the ALJ's decision did not specifically address portions of the evidence from Ms. Malin's treatment notes, the plaintiff has not met the burden of showing harmful error. As such, remand is not warranted.

## V.     Conclusion

The Court finds that the ALJ's decision is supported by substantial evidence based on the applicable legal standards. Accordingly, the decision of the Commissioner finding the plaintiff is not disabled is **affirmed**.

SO ORDERED this 31st day of March, 2023.

*Christine D. Little*
_____
Christine D. Little
United States Magistrate Judge